Filed 10/18/21  P. v. Velasquez CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>YOVANNI VELASQUEZ,<br><br>    Defendant and Appellant. | B309388<br><br>(Los Angeles County<br>Super. Ct. No. BA329116-06) |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County, Larry P. Fidler, Judge.  Affirmed.

Kevin D. Sheehy, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, David E. Madeo and Theresa A. Patterson, Deputy Attorneys General, for Plaintiff and Respondent.

————————————————

Yovanni Velasquez, convicted of the first degree murder of a 23-day-old infant, conspiracy to commit murder, attempted willful, deliberate and premeditated murder and two counts of assault with a semiautomatic firearm in a gang-related shooting on September 15, 2007, appeals the denial of his petition for resentencing pursuant to Penal Code section 1170.95.[1] Velasquez, who acted as the lookout during the shooting, contends the superior court, after appointing counsel and finding he had made a prima facie showing of entitlement to relief, applied the wrong standard of proof at the evidentiary hearing following issuance of an order to show cause. Because the record of conviction establishes that Velasquez is ineligible for resentencing as a matter of law, any error committed by the superior court was harmless. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *Velasquez's Trial for Murder*

Velasquez was charged in a third amended information, along with Giovanni Macedo, Juan Pablo Murillo, Guadalupe Torres Rangel and two other men, with one count of murder (§ 187, subd. (a)), three counts of attempted willful, deliberate and premeditated murder (§§ 187, 664),[2] one count of attempted extortion (§§ 520, 664), one count of conspiracy to commit extortion (§§ 182, 520) and one count of conspiracy to commit murder (§§ 182, 187). In connection with each count the People alleged a principal had used a firearm causing great bodily injury

---

[1]     Statutory references are to this code.

[2]     At trial the court granted the People's motion to reduce the charge of attempted murder as to two of the victims to assault with a semiautomatic firearm (§ 245, subd. (b)).

2

or death within the meaning of section 12022.53, subdivisions (d) and (e)(1). As to the murder count the People also alleged the defendants had intentionally killed the victim while they were active participants in a criminal street gang and the murder was carried out to further the activities of the gang. (§ 190.2, subd. (a)(22).) As to all counts the information alleged the crimes had been committed to benefit a criminal street gang (§ 186.22, subd. (b)).

Our opinion affirming Velasquez's judgment of conviction describes the evidence presented at his joint trial with Murillo and Rangel. (*People v. Murillo* (Feb. 15, 2012, B226736) [nonpub. opn.].)

Velasquez was a member of the Columbia Lil Cycos (CLC), a clique of the 18th Street criminal street gang that controlled an area of Los Angeles near MacArthur Park. CLC members managed narcotics traffic within their territory by selling or supplying drugs to secondary dealers. CLC members also taxed unlicensed street vendors who sold their wares within the densely populated neighborhoods east of MacArthur Park.

Francisco Clemente, who sold electronic items on 6th Street near MacArthur Park, was approached multiple times in the months preceding the September 2007 shooting by CLC gang members or associates, including Rangel, who demanded money for the right to sell on the street. On one occasion six men approached Clemente and told him he had to pay to sell his merchandise or they would beat him. Clemente pulled out a knife; the men fled. On another occasion, a week or two before the shooting, a man Clemente identified as Sergio Pantoja, the leader of the CLC clique of the 18th Street gang, threatened he

3

would "send [Clemente] to hell" if he did not leave the street. Clemente refused to leave.

On September 15, 2007 Clemente was selling his merchandise at 6th Street and South Burlington Avenue. He was accompanied by his girlfriend and another friend, whose infant son was in a stroller near her, behind Clemente. Around 6:00 p.m. Rangel demanded $80 from Clemente, who refused to pay. Around 9:00 p.m. a man holding a gun stepped out of a nearby video store, walked toward Clemente and shot at him from six or seven feet away. Several shots hit Clemente.[3] Another shot struck the infant, seated in the stroller behind Clemente, killing him.

Based on information from a teenager who helped her parents sell goods in the neighborhood and had witnessed the shooting and could identify several of the participants, the police established a wiretap on Murillo's phone and eventually arrested Murillo, Rangel, Velasquez, Macedo and several others.

Macedo entered a plea agreement and testified for the People at Murillo, Rangel and Velasquez's trial. Macedo, who was 18 years old at the time of the shooting, identified Velasquez and Rangel as participants in the shooting and said Murillo, who was second in command of the CLC clique after Pantoja, organized the attack at Pantoja's direction. A week or so before the shooting Murillo and Macedo had discussed the possibility of beating Clemente to force him to pay the gang's taxes, but Clemente was not on the street that day. On the day of the shooting Murillo and Macedo met Velasquez, Rangel and Juvenal

---

[3] Clemente was shot in the right face and neck area, upper right chest and right abdomen. He suffered life-threatening wounds to his chest and head and spent 15 days in the hospital.

4

Mejia, another gang member, at a donut shop near MacArthur Park where they planned the attack on Clemente. Murillo then assigned roles, designating Macedo as the shooter, Velasquez and Murillo as lookouts, and Mejia to identify Clemente for Macedo. According to Murillo, it was Pantoja's idea to shoot Clemente rather than beat him.

After receiving their assignments, the members of the group headed to their positions. Mejia walked Macedo past Clemente several times to make sure Macedo understood which vendor was the target. Mejia and Macedo then walked into a video store, where Macedo considered whether he would actually shoot the vendor. Because Pantoja had on several occasions expressed displeasure with Macedo for not doing enough work for the gang and questioned Macedo's loyalty, Macedo decided to shoot Clemente as directed. According to Macedo, he stepped out of the video store and walked a few steps toward Clemente, raised the gun with both hands, fired four shots at Clemente's head and then ran. At that time Macedo assumed he had killed Clemente and did not know he had shot and killed the infant.

Another participant in the shooting incident, David Gonzalez, also entered a plea agreement and testified for the People. Gonzalez was at the pre-shooting meeting at the donut shop. After the group left the shop, Murillo gave Macedo a gun. Macedo told Gonzalez to wait for him and to take the gun after the shooting. Gonzalez did as instructed and then gave the gun to Velasquez.

2. *Jury Instructions*

With respect to the charge of murder, the trial court instructed the jury, in part, with CALCRIM Nos. 500 (Homicide: General Principles), 520 (First or Second Degree Murder with

5

Malice Aforethought), 521 (First Degree Murder), 562 (Transferred Intent) and 563 (Conspiracy To Commit Murder). In particular, CALCRIM No. 520 defined express malice and implied malice; and CALCRIM No. 521 explained, "The defendant is guilty of first degree murder if the People have proved that he acted willfully, deliberately, and with premeditation.  The defendant acted willfully if he intended to kill.  The defendant acted deliberately if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill.  The defendant acted with premeditation if he decided to kill before committing the act that caused death."  CALCRIM No. 521 also instructed, if the jury decided the defendant had committed murder but the People had not met their burden to prove beyond a reasonable doubt the killing was first degree murder, the murder was of the second degree.

CALCRIM No. 563 instructed, "The defendants are charged in Count 7 with Conspiracy to commit Murder in violation of Penal Code section 182.  [¶] To prove that a defendant is guilty of this crime, the People must prove that:  [¶]  1. The defendant intended to agree and did agree with one or more of the other defendants or co-participants to intentionally and unlawfully kill; [¶] 2. At the time of the agreement, the defendant and one or more of the other alleged members of the conspiracy intended that one or more of them would intentionally and unlawfully kill; [¶] 3. One of the defendants or co-participants committed at least one of the following overt acts alleged to accomplish the killing . . . ."

The court's instructions on the special circumstance allegation included CALCRIM Nos. 705 (Special Circumstances:

6

Circumstantial Evidence—Intent or Mental State) and 736 (Special Circumstances: Killing by Street Gang Members). This latter instruction provided, "The defendant is charged with the special circumstance of committing murder while an active participant in a criminal street gang in violation of Penal Code section 190.2(a)(22). [¶] To prove that this special circumstance is true, the People must prove that: [¶] l. The defendant intentionally killed [the infant]. [¶] 2. At the time of the killing, the defendant was an active participant in a criminal street gang; [¶] 3. The defendant knew that members of the gang engage in or have engaged in a pattern of criminal gang activity; [¶] AND [¶] 4. The murder was carried out to further the activities of the criminal street gang."

As for aiding and abetting, the court instructed with CALCRIM No. 400 (Aiding and Abetting: General Principles), defining a "perpetrator" and explaining, "A person is equally guilty of the crime whether he or she committed it personally or aided and abetted the perpetrator who committed it. [¶] Under some specific circumstances, if the evidence establishes aiding and abetting of one crime, a person may also be guilty of other crimes that occurred during the commission of the first crime." The court also instructed with CALCRIM No. 401 (Aiding and Abetting: Intended Crimes), defining the elements of aiding and abetting, including that the defendant knew the perpetrator intended to commit the crime and specifically intended to facilitate the commission of that crime. The court followed those two instructions with CALJIC No. 3.02 (rather than CALCRIM No. 402), explaining the natural and probable consequences doctrine.

7

As given, CALJIC No. 3.02 provided, "One who aids and abets another in the commission of a [crime] or [crimes] is not only guilty of [that] [those] crimes, but is also guilty of any other crime committed by a principal which is a natural and probable consequence of the crimes originally aided and abetted. [¶] In order to find the defendant guilty of the crimes of Murder as charged in Count 1, Attempted Murder as charged in Count 2, and Assault with a Semi-Automatic Firearm as charged in counts 3 and 4, you must be satisfied beyond a reasonable doubt that: [¶] 1. The crimes of [Simple Assault], [Assault with a Firearm], and/or [Murder] were committed; [¶] 2. That the defendant aided and abetted that/those crimes; [¶] 3. That a co-participant in that crime committed the crimes of [Simple Assault], [Assault with a Firearm], and/or [Murder]; and [¶] 4. The crimes of Murder, Attempted Murder, and/or Assault with a Semi-Automatic Firearm were a natural and probable consequence of the commission of the crimes of [Simple Assault], [Assault with a Firearm], and/or [Murder]. [¶] In determining whether a consequence is 'natural and probable,' you must apply an objective test . . . . [¶] You are not required to unanimously agree as to which originally contemplated crime the defendant aided and abetted, so long as you are satisfied beyond a reasonable doubt and unanimously agree that the defendant aided and abetted the commission of an identified and defined target crime and that the crime of Murder, Attempted Murder, and/or Assault with a Semi-automatic Firearm was a natural and probable consequence of the commission of that target crime."

With respect to conspiracy the court instructed in the language of CALCRIM No. 417 (Liability for Coconspirators' Acts): "A member of a conspiracy is criminally responsible for the

8

crimes that he or she conspires to commit, no matter which member of the conspiracy commits the crime.  [¶]  A member of a conspiracy is also criminally responsible for any act of any member of the conspiracy if that act is done to further the conspiracy and that act is a natural and probable consequence of the common plan or design of the conspiracy.  This rule applies even if the act was not intended as part of the original plan. . . .”

3. *Verdict, Sentence and Appeal*

The jury convicted Velasquez of first degree premeditated murder, conspiracy to commit murder and two counts of assault with a semiautomatic firearm with true findings on the firearm-use and gang enhancement allegations, as well as the gang-murder special circumstance pursuant to section 190.2, subdivision (a)(22).  He was found not guilty of attempted extortion and conspiracy to commit extortion.

The court sentenced Velasquez to an indeterminate state prison term of life without parole plus 25 years to life for murder in the first degree with the special circumstance and the related gun-use enhancement, plus two consecutive indeterminate terms of 25 years to life for conspiracy to commit murder with the firearm-use enhancement, plus a determinate sentence of 17 years eight months for the aggravated assault counts and associated gang enhancements.

In Velasquez's direct appeal with his codefendants Murillo and Rangel, we rejected the argument there was insufficient evidence to support the gang-murder special circumstance or the finding the infant's murder was committed for the benefit of a criminal street gang within the meaning of section 186.22, subdivision (b)(1), as well as various other claims of evidentiary, instructional and sentencing error with one correction in

9

Murillo's sentence for conspiracy to commit extortion. Velasquez's judgment of conviction was affirmed. (*People v. Murillo*, *supra*, B226736.)

  5. *Velasquez's Section 1170.95 Petition for Resentencing*

  On January 29, 2019 Velasquez, representing himself, filed a petition for resentencing under section 1170.95 and requested the court appoint counsel to represent him in the resentencing proceedings. The superior court appointed counsel, and the prosecutor thereafter filed an opposition memorandum challenging the constitutionality of section 1170.95. Velasquez's counsel filed a reply memorandum in support of the petition, arguing the evidence was not sufficient to show that Velasquez was a major participant in the crime who had acted with reckless indifference to human life. The prosecutor responded with a second opposition memorandum arguing Velasquez was ineligible for resentencing because he had acted with an intent to kill and directly aided and abetted the murder. Our opinion affirming Velasquez's convictions and the instructions from his trial were attached as exhibits to the memorandum.

  On August 4, 2020 the superior court found a prima facie case had been established and issued an order to show cause why resentencing relief should not be granted. (The court again directed an order to show cause be issued on October 3, 2020.) The hearing on the order to show cause was held on October 9, 2020.

  No new evidence was presented by the prosecutor or Velasquez at the hearing. After brief argument from counsel, the court stated, "I'll tell you where my thinking is going. . . . The question is whether he can be tried under the present law at the present time. He's, to me, a clear aider and abettor. This is pre-

planned. Everybody was together. He had a specific role of being the lookout. And everybody had to participate in order to make it come off. And that's sort of where I'm headed at the present time."

In a written ruling filed November 5, 2020 the court denied the petition. The court reasoned, "The jury convicted the petitioner of premeditated murder in the first degree with the special circumstance of murder while an active participant in a street gang. He was also convicted of conspiracy to commit the murder of the vendor." The court quoted portions of the jury instructions requiring a finding the petitioner had acted with the intent to kill and wrote, "The closing argument reiterated that defendant Velasquez acted with an intent to kill and directly aided and abetted the murder, and not some lesser target crime which led to the murder. . . . [¶] Additionally, the closing arguments show that finding the premeditation and deliberation enhancement true required finding the intent to kill. . . . [¶] Further, the closing arguments show that finding the special circumstance of murder while an active participant in a gang required finding an intent to kill."

The court's ruling continued, "The testimony at trial showed that: . . . Defendant Velasquez was present at the donut shop for the plan to shoot and kill victim Clemente. Defendant Velazquez was present as the gun was given to co-defendant Macedo to use to kill victim Clemente. Velasquez was aware of the dangers to life and knew that a gun would be used to shoot and kill the street vendor in a crowded sidewalk. Defendant Velasquez acted as a lookout while a fellow 18th Street gang member attempted to shoot and kill victim Clemente on a crowded sidewalk. [¶] After the shooting, defendant Velasquez's

11

actions are also consistent with directly aiding and abetting the murder pursuant to the plan to kill the vendor.  Defendant Gonzalez received the gun from the shooter and immediately gave it to defendant Velasquez to conceal it.  [¶]  Petitioner could be found liable under the changes to P.C. 189, pursuant to P.C. 189(E)(2).  [¶]  The person was not the actual killer, but, with the intent to kill, aided, abetted, counsel, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree."

Velasquez filed a timely notice of appeal.

## DISCUSSION

1. *Senate Bill No. 1437 and the Section 1170.95 Petition Procedure*

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) substantially modified the law relating to accomplice liability for murder, eliminating the natural and probable consequences doctrine as it applies to aiding and abetting and significantly narrowing the felony-murder exception to the malice requirement for murder.  (§§ 188, subd. (a)(3), 189, subd. (e)(3); *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*); see *People v. Gentile* (2020) 10 Cal.5th 830, 842-843 (*Gentile*).)  It also authorized, through new section 1170.95, an individual convicted of felony murder or murder based on the natural and probable consequences doctrine to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not have been convicted of murder because of Senate Bill 1437's changes to the definition of the crime.  (See *Lewis*, at p. 957; *Gentile*, at p. 843.)

If a petition for resentencing contains all the information required by section 1170.95, subdivision (b)(1)(A)), the court must

12

appoint counsel to represent the petitioner, if requested; direct the prosecutor to file a response to the petition; permit the petitioner to file a reply; and determine if the petitioner has made a prima facie showing he or she is entitled to relief. (§ 1170.95, subd. (c); see *Lewis*, *supra*, 11 Cal.5th at pp. 962-963.) In determining whether the petitioner has carried this burden, the superior court properly examines the record of conviction, "allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis*, at p. 971.) Appellate opinions "are generally considered to be part of the record of conviction" (*id.* at p. 972), as are the jury instructions given at trial (see, e.g., *People v. Soto* (2020) 51 Cal.App.5th 1043, 1055, review granted Sept. 23, 2020, S263939).

The prima facie inquiry under section 1170.95, subdivision (c), "is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause. . . . However, if the record, including the court's own documents, contain[s] facts refuting the allegations made in the petition, then the court is justified in making a credibility determination adverse to the petitioner." (*Lewis*, *supra*, 11 Cal.5th at p. 971, internal quotation marks omitted]; see *People v. Daniel* (2020) 57 Cal.App.5th 666, 675, review granted Feb. 24, 2021, S266336 [any error in denying petition at prima facie stage without appointing counsel is harmless if the record of conviction "conclusively demonstrates" petitioner is ineligible for relief].)

If the section 1170.95, subdivision (c), prima facie showing has been made, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts.  (§ 1170.95, subd. (d)(1).)  At the hearing the prosecution has the burden of proving beyond a reasonable doubt that the petitioner is ineligible for resentencing.  (§ 1170.95, subd. (d)(3); *People v. Rodriguez* (2020) 58 Cal.App.5th 227, 230, review granted Mar. 10, 2021, S266652; *People v. Lopez* (2020) 56 Cal.App.5th 936, 949, review granted Feb. 10, 2021, S265974; but see *People v. Duke* (2020) 55 Cal.App.5th 113, 123, review granted Jan. 13, 2021, S265309.)  The prosecutor and petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.  (See *Gentile*, *supra*, 10 Cal.5th at pp. 853-854.)

2. *The Record of Conviction Establishes Velasquez Is Ineligible for Resentencing as a Matter of Law*

As discussed, in addition to instructions regarding Velasquez's liability for murder if the jury found he was a direct aider and abettor of Macedo, the actual killer, the trial court instructed with CALJIC No. 3.02, permitting Velasquez to be convicted of murder under the natural and probable consequences doctrine if he knowingly and intentionally aided and abetted Macedo or another of his confederates in committing an assault or aggravated assault on Clemente and a reasonable person would know murder was the likely result of that crime. Similarly, pursuant to CALCRIM No. 417 Velasquez could have been convicted of conspiracy to commit murder if he conspired with his confederates to commit an assault or aggravated assault and the murder of the infant was a natural and probable

14

consequence of the common plan or design of the crime Velasquez conspired to commit. Those instructions on this now-invalid alternative theory of accomplice liability were likely the basis for the superior court's finding that Velasquez had made a prima facie showing of his entitlement to resentencing relief under section 1170.95.

However, Velasquez's jury found him guilty of first degree murder after being instructed pursuant to CALCRIM No. 521 that this finding required the People to prove he had acted willfully, deliberately and with premeditation, that is, with an intent to kill (express malice). The verdict form specifically stated that Velasquez "did unlawfully and with malice aforethought murder [the infant]." The jury also found true the gang-murder special circumstance, which required the People to prove, among other elements under CALCRIM No. 736, that Velasquez intentionally killed the infant (or, combined with CALCRIM No. 401, as an aider and abettor he specifically intended to assist the perpetrator in committing a gang-related murder).[4] The verdict form for the special-circumstance finding recited that Velasquez "intentionally killed the victim while the defendant was an active participant in a criminal street gang."

Based on its verdict and these findings the jury necessarily found Velasquez had acted with a specific intent to kill, express malice, as a direct aider and abettor—a valid theory of accomplice liability for murder under amended sections 188 and 189—

---

[4] In connection with the gang-related special-circumstance allegation, the trial court had also instructed with CALCRIM No. 705, which advised the jury a true finding required the People to prove Velasquez had acted with the mental state described in CALCRIM No. 736.

15

notwithstanding the instructions on the natural and probable consequences doctrine. As such, Velasquez is ineligible for resentencing under section 1170.95 as a matter of law. (See *People v. Soto*, *supra*, 51 Cal.App.5th at p. 1055, review granted [where jury instructions required a finding of malice, defendant was ineligible for relief as a matter of law]; see also *People v. Verdugo* (2020) 44 Cal.App.5th 320, 326-327, review granted Mar. 18, 2020, S260493 [the record of conviction might include information "that establishes the petitioner is ineligible for relief as a matter of law because he or she was convicted on a ground that remains valid notwithstanding Senate Bill 1437's amendments to sections 188 and 189"].) Any error in the superior court's application of the proper standard of proof at the evidentiary hearing was harmless:[5] There is no reasonable probability a more favorable result would have been obtained if the correct standard of proof had been used. (See *Lewis*, *supra*, 11 Cal.5th at pp. 973-974 [applying *People v. Watson* (1956) 46 Cal.2d 818 state law standard of prejudice to procedural errors in assessing whether petitioner had made a prima facie showing of eligibility for resentencing relief].)

---

[5] We agree with Velasquez the superior court's ruling he "could be found liable under the changes to P.C. 189" and the absence of any reference to proof beyond a reasonable doubt suggest the superior court did not understand its responsibility to act as an independent factfinder and evaluate the evidence of his continued liability for murder under that standard, as held in *People v. Rodriguez*, *supra*, 58 Cal.App.5th at page 230, review granted, and *People v. Lopez*, *supra*, 56 Cal.App.5th at page 949, review granted. The Attorney General essentially concedes this point, although arguing any error was harmless.

Velasquez disputes this analysis, noting that prior to *People v. Chiu* (2014) 59 Cal.4th 155 a defendant could be convicted of first degree premeditated murder under the natural and probable consequences doctrine. Thus, Velasquez argues, the first degree murder verdict in his case does not necessarily mean the jury found he had acted with express malice.[6] However, as the Attorney General explains, in *Chiu* the jury was instructed, to find the defendant guilty of first degree murder under the natural and probable consequences doctrine, it only had to find the perpetrator acted willfully and with premeditation in committing the nontarget offense of murder. (*Id.* at p. 161.) Here, CALCRIM No. 521, as given, instructed the jury that, if it found any of the defendants guilty of murder (under any of the theories presented), to then find the defendant guilty of first degree, rather than second degree, murder, the jury had to find the defendant—not simply the shooter—acted willfully and with premeditation.[7] (Cf. *People v. Stevenson* (2018) 25 Cal.App.5th

---

[6] Although not outcome determinative, Velasquez has not obtained (and apparently has not sought) habeas relief on the basis of *Chiu* error. (Cf. *In re Martinez* (2017) 3 Cal.5th 1216, 1218 ["on a petition for writ of habeas corpus, as on direct appeal, *Chiu* error requires reversal unless the reviewing court concludes beyond a reasonable doubt that the jury actually relied on a legally valid theory in convicting the defendant of first degree murder"].)

[7] In contrast to the first degree murder instruction, which required a finding that each defendant had acted willfully and with premeditation, the attempted murder instruction permitted the jury to find a defendant guilty of attempted willful, deliberate and premeditated murder if "the defendant and/or Giovanni Macedo" acted with the requisite intent.

974, 984 [no *Chiu* error because modified CALCRIM No. 521 as given required the jury to base its finding of first degree murder on defendant's deliberation and premeditation, not perpetrator's].)

Velasquez also fails in his attempt to negate the express malice finding included in the gang-murder special circumstance. Velasquez argues there was no evidence at trial he intended to kill the infant victim, as required by the special circumstance instructions. But the jury was properly instructed on transferred intent, and the Supreme Court in *People v. Shabazz* (2006) 38 Cal.4th 55, 64-66, held the transferred intent doctrine applies to the gang-murder special circumstance.

## DISPOSITION

The postjudgment order denying Velasquez's motion for resentencing under section 1170.95 is affirmed.


PERLUSS, P. J.

We concur:


SEGAL, J.


FEUER, J.

18